# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **V.-Z.H., M.H., G.H., and B.H. Jr.**

**No. 20-1037** (Kanawha County 17-JA-166, 17-JA-167, 17-JA-168, and 17-JA-169)

## MEMORANDUM DECISION

Petitioner Father B.H., by counsel Michael M. Cary, appeals the Circuit Court of Kanawha County's December 3, 2020, order terminating his parental rights to V.-Z.H., M.H., G.H., and B.H. Jr.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Kenneth Starcher, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights without imposing a less-restrictive dispositional alternative and in failing to comply with Rule 27 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2017, the DHHR filed an abuse and neglect petition against the parents alleging that they failed to supervise the children, regularly engaged in domestic violence, and abused and sold drugs. Specifically, the DHHR alleged that law enforcement was contacted after two-year-old B.H. Jr. and four-year-old G.H. were found unsupervised and wandering alone outside in the streets. The maternal grandfather eventually located both children after he confronted the parents who were found asleep in the living room and difficult to wake. He then took the three youngest children back to his home, fearing for their safety. In retaliation, petitioner went to the maternal grandfather's home and, in the presence of the three youngest children, held a gun to the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

grandfather's head, pistol whipped him, and threatened to kill him for taking the children. Immediately thereafter, the home where the parents and the children had been staying burned down. The home was owned by the maternal grandfather and the fire resulted in a total loss, which included all of the children's belongings. The parents were charged with child abuse creating risk of injury and petitioner was charged with wanton endangerment. There was also an active investigation for arson and petitioner had evaded arrest by the time of the petition's filing.

Over the next few months, the circuit court continued hearings to allow the DHHR to obtain Child Advocacy Center interviews of the children.[2] The circuit court also ordered the parents to submit to drug screens and attend domestic violence counseling. The DHHR filed an amended petition in August of 2017, alleging that the parents threatened to harm the children if they divulged information to anyone. The DHHR further alleged that the parents denied drug abuse yet tested positive for methamphetamine in June of 2017. The DHHR alleged that petitioner had refused to regularly submit to drug screens or attend his domestic violence counseling classes. Also, at a status hearing in September of 2017, the circuit court ordered that the parents' electronics be confiscated due to the parents recording meetings with their attorneys and DHHR service providers.

In December of 2017, the circuit court held a status hearing. The record is unclear, but it appears that the circuit court may have granted the parents a preadjudicatory improvement period at this time. The circuit court entered orders in January and March of 2018 that found that the parents had been complying with the terms and conditions of their improvement periods. However, in April of 2018, the circuit court held an adjudicatory hearing and adjudicated the parents as abusing parents.[3] The circuit court also granted the parents a post-adjudicatory improvement period, and by October of 2018 the DHHR recommended reunification services for the parents and that they receive overnight weekend visits with the children. Over the course of the next fifteen months, the parents received services aimed at reunification.

According to the guardian, at a multidisciplinary team ("MDT") meeting held in January of 2020, the DHHR recommended termination of petitioner's parental rights due to his recent federal drug trafficking charges. In February of 2020, the guardian filed a report also recommending the termination of petitioner's parental rights as he would likely "serve a long prison sentence." The same month, the circuit court held a dispositional hearing. A Child Protective Services ("CPS") worker testified that the DHHR recommended termination of petitioner's parental rights due to his recent conviction and incarceration for federal charges of transporting methamphetamine across state lines and his resultant ten-year prison sentence. The circuit court noted that petitioner "will be incarcerated for distribution of narcotics for the majority of the next decade." Based on the evidence presented, the circuit court concluded that there was

---

[2]This case has a protracted history that includes the filing of one amended petition, the oversight of four separate presiding judges, the appointment of various counsel for petitioner, and numerous continuances.

[3]According to the circuit court's docket, no order was entered reflecting its rulings at this hearing. However, the circuit court's final dispositional order states that the parents were adjudicated on April 19, 2018, and the guardian's report states that "both parents stipulated to abuse and neglect of their children and were adjudicated as such."

no reasonable likelihood that petitioner could correct the conditions of abuse or neglect in the near future and that termination was necessary for the children's welfare. The circuit court terminated petitioner's parental rights by its order entered on December 3, 2020. Petitioner appeals the dispositional order.[4]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner avers that after conferring with the Office of the Kanawha County Circuit Clerk and reviewing the circuit court's docket sheet, there is no entry for an adjudicatory order reflecting petitioner's adjudication. As such, petitioner argues that his parental rights were improperly terminated as there was no adjudicatory order. Petitioner contends that the circuit court failed to comply with Rule 27 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, which provides that

> [a]t the conclusion of the adjudicatory hearing, the court shall make findings of fact and conclusions of law, in writing *or on the record*, as to whether the child is abused and/or neglected in accordance with W. Va. Code § 49-4-601(i). The court shall enter an order of adjudication, including findings of fact and conclusions of law, within ten (10) days of the conclusion of the hearing, and the parties and all other persons entitled to notice and the right to be heard shall be given notice of the entry of this order.

(Emphasis added).

While we recognize that the court did not strictly comply with this rule when it failed to enter an adjudicatory order, we must further examine whether a basis for relief exists under the specific facts of this case. In making this determination, it is important to note that we have long held that

---

[4]The mother's parental rights were also terminated below. The permanency plan for the children is adoption by the maternal grandfather.

[i]n a child abuse and neglect hearing, before a court can begin to make any of the dispositional alternatives under W.Va. Code, 49-6-5 [now § 49-4-604], it must hold a hearing under W.Va. Code, 49-6-2 [now § 49-4-601], and determine "whether such child is abused or neglected." Such a finding is a prerequisite to further continuation of the case. Syllabus Point 1, *State v. T.C.*, 172 W.Va. 47, 303 S.E.2d 685 (1983).

Syl. Pt. 3, *In re A.P.-1*, 241 W. Va. 688, 827 S.E.2d 830 (2019). This holding is not predicated on the entry of an order. Rather, the import is on whether the court made a determination as to abuse and/or neglect. Despite the fact that there is no apparent order entered reflecting petitioner's stipulated adjudication and the circuit court's acceptance of said stipulation, the circuit court may have nonetheless appropriately made the required findings on the record, as allowed under Rule 27. However, because petitioner failed to include transcripts of any of the docketed entries reflecting adjudicatory hearings, we are asked to presume error. We decline to do so.

As required by Rule 7(d) of the West Virginia Rules of Appellate Procedure, "petitioner shall prepare and file an appendix containing . . . [t]he judgment or order appealed from, and all other orders applicable to the assignments of error on appeal," "[m]aterial excerpts from official transcripts of testimony or from papers in connection with a motion," and "[o]ther parts of the record to which the parties wish to direct the Court's attention." Moreover, Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that "[t]he argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal." Rule 10(c)(7) further provides that "[t]he Court may disregard errors that are not adequately supported by specific references to the record on appeal." As we have previously held,

[a]n appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.

Syl. Pt. 4, *State v. Myers*, 229 W. Va. 238, 728 S.E.2d 112 (2012) (citations omitted). Petitioner does not allege that the record failed to contain the requisite findings of fact and conclusions of law supporting his adjudication, and instead only argues that there is no order.[5] Because petitioner failed to include corresponding transcripts or proof of lack thereof by way of an affidavit from the circuit court's reporter, petitioner has precluded this Court from conducting any meaningful appellate review related to his assignments of error. Therefore, we find petitioner is entitled to no relief in this regard.

Next, petitioner argues that the circuit court erred in terminating his parental rights rather than employing a less-restrictive dispositional alternative pursuant to West Virginia Code § 49-4-604(c)(5), which allows for temporarily placing a child in a legal guardianship. Petitioner avers

---

[5]We further note that petitioner fails to specifically raise as error that the circuit court found that he was previously adjudicated.

4

that at the time of his arrest, he had substantially complied with his improvement period and was in the process of being reunified with the children. According to petitioner, because the children were placed with the maternal grandfather, there was no need to terminate his parental rights and the circuit court should have implemented a guardianship of the children until petitioner was released from federal prison.

However, the evidence introduced during the proceedings below supports the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) permits a circuit court to terminate parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. With these parameters in mind, it is clear that the record supports the above finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect, given his continued criminal conduct which resulted in his ten-year-prison sentence and resultant inability to be reunified with his children. Petitioner received the benefit of the DHHR's services for years[6] and was exercising overnight visitations with the children in preparation for reunification when he was arrested for transporting methamphetamine across state lines. Therefore, petitioner apparently gained no long-lasting improvement or insight and continued to participate in the illegal drug trade. While it is true that petitioner may eventually be released from federal incarceration in ten years, it is worthwhile to note that only one child will be under the age of eighteen at that time. The children deserve permanency and stability and should not be forced to wait ten years upon petitioner's

---

[6]We further note that the record is unclear as to whether petitioner obtained both a preadjudicatory improvement period and a post-adjudicatory improvement period, but it is clear that petitioner received extensive DHHR services well over the time limit for improvement periods. *See* W. Va. Code § 49-4-610(9) ("[N]o combination of any improvement periods or extensions thereto may cause a child to be in foster care more than fifteen months of the most recent twenty-two months, unless the court finds compelling circumstances by clear and convincing evidence that it is in the child's best interests to extend the time limits[.]"). We recently addressed the failure of circuit courts to adhere to statutory requirements and deadlines in abuse and neglect matters.

> The procedural and substantive requirements of West Virginia Code § 49-4-601 *et seq.*, the Rules of Procedure for Child Abuse and Neglect [Proceedings], and our extensive body of caselaw are not mere guidelines. The requirements contained therein are not simply window dressing for orders which substantively fail to reach the issues and detail the findings and conclusions necessary to substantiate a court's actions. The time limitations and standards contained therein are mandatory and may not be casually disregarded or enlarged without detailed findings demonstrating exercise of clear-cut statutory authority.

*State ex rel. S.W. v. Wilson*, 243 W. Va. 515, 520, 845 S.E.2d 290, 295 (2020). We remind both the circuit court and the parties that "[c]hild abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security." Syl. Pt. 1, in part, *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991).

potential release to see if he regains custody. We have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child[ren] will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citation omitted).

Furthermore, as it is clear that that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future, he was not entitled to a less-restrictive dispositional alternative such as the maternal grandfather's guardianship of the children. We have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). We also note the circuit court's compliance with our prior direction that

> [w]hen no factors and circumstances other than incarceration are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it. This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 3. As noted above, the guardian, DHHR, and circuit court all focused on petitioner's lengthy incarceration in arguing for and imposing termination of his parental rights. However, the record shows that the court clearly considered these factors, detailing the fact that petitioner would be incarcerated for ten years as a result of his conviction of drug crimes. Given that most of the children would have reached the age of majority by the time of his release, it was clearly in their best interests to achieve permanency, security, stability, and continuity during petitioner's extended absence. As such, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 3, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 22, 2021


**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton